OCTOBER AND NOVEMBER TERM, 1883, No. 17.    OCTOBER 6, 1884.

## Mehaffey's Appeal.

1. Where a lease was executed for the sole purpose of mining for petroleum, with the agreement that diligent search should be made by the lessee, and if no oil should be found, and the land should be abandoned, the lease should be null and void, and after search the land was abandoned, but the machinery and fixtures remained, a court of equity has jurisdiction to require the lease to be delivered up for cancellation.

2. The outstanding lease casts a cloud upon the title, which a court of equity may justly remove.

[Mehaffey's Appeal.]

Before Mercur, C. J.; Gordon, Paxson, Trunkey, Sterrett, Green, and Clark, JJ.

Appeal of James A. Mehaffey, W. S. Patteson, and others from a decree of the Court of Common Pleas of *Westmoreland County* ordering a lease given by James L. Thompson and wife to James A. Mehaffey and others to be given up for the purposes of cancellation.

After bill and answer filed, the case was referred to L. W. Doty as master, who reported, *inter alia*, the following facts:

"That, on 15th August, 1877, James L. Thompson and wife executed a lease to James A. Mehaffey, H. T. Metzgar, and Michael Rugh for about eight acres of land in Washington township, Westmoreland county, for the sole and only purpose of mining and excavating for petroleum, rock or carbon oil, and for the laying of pipe, either under or on top of said surface, for transportation of oil from said premises.

That the words 'or other valuable mineral or volatile substances,' in the body of the lease, were erased before the execution of the instrument, and that the words 'or gas,' by the consent of both parties, were incorporated into the lease, after its execution and delivery, and after actual operations had been commenced at the well. The gas so discovered was to be used simply for the purpose of drilling other wells, and was not to be otherwise appropriated by the lessees.

That the Westmoreland Oil Company was organized for the purpose of testing the 'Beaver Run territory' for oil; it was an unincorporated association; James A. Mehaffey was president and S. G. Thompson was secretary; the respondents were the principal stockholders; ninety-six shares of stock were sold, and of these, James A. Mehaffey held fifty-four.

That James A. Mehaffey, H. T. Metzgar, and Michael Rugh were appointed a committee to secure oil leases; that about one hundred leases were obtained by this committee from parties owning property in Washington, Bell, Loyalhanna, and Salem townships, Westmoreland county, in what is known as Beaver Run territory; that these leases embraced about five hundred acres of land.

That H. T. Metzgar and Michael Rugh, on 15th August, 1877, assigned the lease obtained from James L. Thompson to James A. Mehaffey, president of and for use of Westmoreland Oil Company with all the property, rights of property, and interests therein conveyed.

[Mehaffey's Appeal.]

That the Westmoreland Oil Company went into possession at or about the same time ; that drilling for oil was commenced in the fall of 1877, and that the well was sunk to a depth of 1,301 feet; that the work was prosecuted at intervals until the fall of 1878, and was then stopped for want of means to prosecute it further.

The gas and salt water were struck and still flow from the well; that no oil was found or produced, and that the territory was abandoned in the fall of 1878, and there was no attempt to take possession of the same, nor to resume operations until after the bill had been filed by complainant."

The master further reported :

"A bill in equity was filed in this case for the purpose of removing a cloud upon complainant's title, and to secure the cancellation of a lease, which was executed by the complainant to the respondents; the complainant alleging that the lease is null and void, and that the outstanding lease hinders the sale of his lands, and does him great wrong and damage.

The respondents, in the first place, deny that equity has any jurisdiction in this case, alleging that there is an adequate remedy at law, either in covenant or in ejectment. To oust the jurisdiction of equity, the plaintiff's remedy must be full, complete, and adequate: Skilton *v.* Webster, Bright, 203.   Covenant lies for the recovery of damages for the breach of a specialty : Shaeffer *v.* Geisenberg, 47 Pa. St., 500.   Though an equitable defense is admissible in an action of covenant, yet, as to the plaintiff, it is strictly a legal action : Lehigh Coal and Navigation Company *v.* Harlan, 27 Pa. St., 429.   The plaintiff here does not see the recovery of damages, nor would the recovery of damages afford him full, complete, and adequate relief.   He apprehends danger in the future, as well as inconvenience and wrong in the present, and he seeks to remove an alleged cloud upon his title, which hinders the sale of his land.   The action of covenant, therefore, would not afford such a full, complete, and adequate remedy as would oust the jurisdiction of a court of equity.

The action of ejectment could not be maintained for two reasons ; First, because the plaintiff, at the institution of the suit, was in possession of the premises, and a party in possession cannot maintain ejectment: Corley *v.* Pentz, 76 Pa. St., 57.   And, second, because ejectment will not lie for an incorporeal hereditament: Black *v.* Hepburne, 2 Yeates, 331.   The right which vested in the respondents by the lease was a right to experiment for

oil; it was a right to work the land for minerals, and vested in them an incorporeal hereditament: Funk v. Haldeman, 3 Smith, 229.

But even if equity have jurisdiction, it is alleged that the license which was granted is irrevocable until the expiration of the full term of twenty years, because the respondents, by virtue of the license, have expended large sums of money in experimenting for oil. It is true that even a parol license, without consideration, on the faith of which the grantee expends money, cannot be revoked at the pleasure of the grantor. This is on the principle of estoppel, because the parties cannot be placed *in statu quo*. Equity treats the contract thus executed as a contract giving absolute rights: Huff v. McCauley, 3 Smith, 206. But here it was expressly provided that, upon failure to find oil, and on an abandonment of the territory, the lease should be null and void. It has been found, as a fact, that no oil was produced, and that the respondents abandoned the territory. What hardship, therefore, in holding the respondents to the terms of their contract? What principle of equity can they invoke to protect them against their express covenants? The covenants must be construed so as to carry into effect the true intent and meaning of the parties, as gathered from their own words. It was agreed that diligent search should be made for oil; that if no oil should be found, and they abandon the territory, that the lease should be null and void, and the land should revert to the lessor. The facts have been found against the respondents. The license is not revoked at the pleasure of the grantor, but in pursuance of the express agreement of the parties. The question of abandonment is one of fact: 2 Washburn, Real Prop., 82. Abandonment is such a relinquishment of the premises as justifies an immediate resumption of it: McKinney v. Reader, 7 Watts, 123. The premises were relinquished and the work suspended in the fall of 1878. More than three years elapsed before complainant's bill was filed, and there had been no attempt to resume the work or to re-occupy the premises. The machinery and fixtures which had been placed on the premises still remained, but all bore evidence of decay. The derrick was out of repair; the ropes were rotten; the smoke-stack had fallen over; the bull-wheels were without cover; the boiler was rusted, and the tubing twisted and bent up. The suspension of work for three years and upwards, and the permitting of the machinery and fixtures to go to decay, are circumstances which indicate an intention on the part

of the respondents to abandon the said territory. The plain meaning of the contract was that diligent search should be made for oil, and, upon such search being made, if no oil was found, the land should revert to the lessor. If there had been an abandonment without a search, the lease would have been null and void; and, if an abandonment after search without finding oil, the lease would also be null and void. Gas was struck, but gas was not the object of the search. After striking gas, it was agreed that it should be used for the purpose of drilling other wells. No attempt has been made to apply it to this purpose. No oil has been produced, and the only excuse for not prosecuting the work was an alleged want of means. Such an excuse will not avail in law. The respondents could have protected themselves in the contract against such a contingency. Not having done so, they will be held to a performance of their covenants. The act of God would excuse performance: Lovering *v.* Coal Co., 54 Pa. St. 291; or prevention by the other party would have relieved them from the conditions of the license. Nothing else would excuse: Myers *v.* Drake, 10 W., 110; Miller *v.* Phillips, 31 Pa. St., 218.

It is further urged that no decree can be made here, as all parties are not joined in the bill. There was evidence tending to show that James A. Mehaffey, on or about the 27th December, 1881, had sold his individual interest in the lease to A. Murray and others. The answer of James A. Mehaffey, which was sworn to on 16th June, 1882, expressly states, that he and his co-defendants are "the legal owners of said lease of land." There was no intimation given, at that time, that he had sold his interests to any person. The co-defendants do not pretend that any sale of their interests was made, and they do not even appear here to urge their defense. A. Murray was examined before the master on the assignment of the lease; he had notice of its conditions. This, perhaps, would be sufficient to put him on inquiry. However, it is not necessary to decide this now, in the opinion of the master. If Murray is a *bona fide* purchaser without notice, his rights would not be affected by this proceeding or by any decree that may be made. Courts can adjudicate upon questions arising between parties, without making other persons, who are interested in the property in question, parties to the suit: Daniel's Chancery, § 191.

The only question remaining is whether or not the prayer of the complainant should be granted, and a decree be entered that the said lease be delivered up and

cancelled as null and void, and *functus officio*. Such an application to a court of equity is not a matter of absolute right on the part of the complainant, but a matter of sound discretion in the court: Story's Equity, § 693. There is no allegation of fraud, accident, or mistake, and if complainant is entitled to any relief in this proceeding, it is on the principle of *quia timet*. The principle upon which these bills are based is simply that it is inequitable that the party in possession should be embarrassed by a hostile claim hanging over him, which, although not actively asserted and not of any validity, is calculated to affect the marketability of his title: Bispham Equity, § 575. Whenever a deed or other instrument may be vexatiously or injuriously used, when the evidence to impeach it may be lost, or that may throw a cloud or suspicion over a title or interest, the party likely to be injured is entitled to relief *quia timet:* Story's Equity, § 694; Bispham, 474.

If an instrument ought not to be used or enforced, it is against conscience for the party holding to retain it, and the other party is entitled to relief *quia timet:* Story's Equity, 700; Eckman *v.* Eckman, 5 Sm., 269. Equity will retain jurisdiction to remove a cloud on title where complainant is in possession, or from other cause, without adequate legal remedy : Sullivan *v.* Finnegan, 101 Mass., 447.

Where a deed, originally valid, has, by subsequent events, become *functus officio*, and yet its existence may be a cloud upon the title, a court of equity will interfere to prevent injustice, and will decree delivery and cancellation of the instrument: Story's Equity, 705. And the doctrine is applied where the instrument has become *functus officio* according to the original intent and understanding of both parties: Story's Equity, 705. Unless the complainant has brought himself within these well-settled principles of the law, his prayer ought to be refused. Here is a lease outstanding, the conditions of which have been violated, and it is, therefore, of no validity. But is it not calculated to affect the marketability of complainant's title? May not the instrument be vexatiously or injuriously used against the lessor? Does it not throw a cloud or suspicion over his title or interest? Is it not clear that it ought not to be used or enforced, and that it is against conscience for the party holding to retain it? Has not this instrument, although valid, originally become *functus officio* by subsequent events, and according to the original intent and understanding of the

[Mehaffey's Appeal.]

parties ? If any or all of these questions are answered in the affirmative, the complainant presents a case which appeals strongly to the discretion of the court to grant the relief prayed for. In the opinion of the master, after a careful consideration of the whole case, a decree should be entered that the lease be given up and cancelled as null and void, and *functus officio.*"

Exceptions filed to the report of the master were dismissed by the Court, (HUNTER, P. J.,) and a decree was entered directing the lease to be delivered up for cancellation.

The defendants thereupon took this appeal, assigning for error the decree of the court.

*William Blakeley* and *H. W. Walkinshaw* for appellants.

The appellants should not be deprived of their constitutional right of trial by jury unless the appellee has brought himself clearly within the equity jurisdiction of the court. If the appellants may possibly have any rights under this lease, the appellee will be left to his remedy at law : Stewart's Appeal, 28 Smith, 88 ; Hagner *v.* Heyberger, 7 W. & S., 104 ; Karns *v.* Tanner, 16 Smith, 297 ; Rhea *v.* Forsyth, 1 Wright, 503 ; North Pennsylvania Coal Co. *v.* Snowden, 6 Wright, 488 ; Barclay's Appeal, 12 Norris, 54 ; Meck's Appeal, 1 Outerbridge, 313.

*W. H. Young* for appellee.

The lease being for a part of the farm upon which the appellee resided, he being thus left in possession by the long abandonment of his lessors, very clearly could not bring ejectment : Corley *v.* Pentz, 76 Pa. St., 57 ; Kribbs *v.* Downing, 25 Pa. St., 399 ; Narehood *v.* Wilhelm, 69 Pa. St., 64.

He had no action of covenant on the lease, for this would not have reached the cloud upon his title. There being thus no adequate remedy at law, there is no doubt of the power of the court to afford relief in this form of action : Kennedy *v.* Kennedy, 7 Wright, 417 ; O'Neil *v.* Hamilton, 8 Wr., 18 ; Eckman *v.* Eckman, 5 Smith, 269 ; Wilson *v.* Getty, 7 Smith, 266.

OCTOBER 20TH, 1884.—PER CURIAM: As the appellee was in possession when he filed this bill, he could not maintain ejectment. Oil was not found or produced in quantities sufficient to require the appellants to retain possession of the premises, and in fact they had

[Moss *v.* Commonwealth.]

abandoned the same. The finding of gas was not a principal purpose or object of the lease. After gas was struck, it was agreed that it should be used for the purpose of drilling other wells. It was, however, not so used, and the whole project of developing the territory was abandoned. Nevertheless, the outstanding lease cast a cloud on the title, which a court of equity may justly remove.

Decree affirmed and appeal dismissed at the costs of the appellants.